# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | |
|---|---|
| **AMY NICOLE SEAL,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Civil Action No. 3:23-CV-462-CLS** |
| ) | |
| **VGW, LTD., VGW HOLDINGS,** ) | |
| **US, INC., VGW US, INC., VGW** ) | |
| **LUCKYLAND, INC.** ) | |
| ) | |
| **Defendants.** ) | |

## AMENDED COMPLAINT

1. This case is brought pursuant to Section 8-1-150(b) of the Alabama Code, which allows "***any other person***" to recover money lost in gambling "for the use of the wife…children or … next of kin of the loser." Ala. Code § 8-1-150(b) (emphasis supplied). As will be explained in detail below, this suit, brought by an individual for the use of those named in the statute, is not a class action pursuant to Rule 23 of the Alabama Rules of Civil Procedure. The legislature has chosen to allow ***any person*** to bring the case, and to allow the benefit to accrue to the family of the losing gamblers, whether or not that person is a proper class representative under Rule 23. It is also not a mass action under the federal Class Action Fairness Act since it is brought by one person. This suit is what is typically called a private attorney general action.

2. Defendant VGW makes available online games and applications across multiple platforms, that are games of chance, and thus illegal gambling, under Alabama law. Such games violate Alabama law if a patron pays money for the chance to win anything of value. As will be explained below, VGW's games allow players to win free or extended playing time, which is a thing of value under Alabama Law. Ala. Code § 13A-12-20(11).

## PARTIES, JURISDICTION, AND VENUE

3. Plaintiff Amy Nicole Seal is an adult resident citizen of Franklin County, Alabama.

4. Defendant VGW, Ltd., is a foreign corporation headquartered in Perth, Australia. It does business through its online gambling games in all counties in Alabama, including Plaintiff's resident county. It does not have a physical place of business in the state of Alabama.

5. Defendants VGW Holdings US, Inc., VGW US, Inc., and VGW Luckyland, Inc., are each a corporation organized under the laws of the state of Delaware, with its principal place of business in Boulder, Colorado. They each do business through online gambling games in all counties in Alabama, including Plaintiff's resident county. None of them have a physical place of business in the state of Alabama.

6. This Court does not have jurisdiction over this civil action because the plaintiff does not allege that she seeks to recover for any person an amount greater than $75,000, exclusive of interest and costs. Therefore, this Court lacks diversity jurisdiction because of the lack of the requisite amount in controversy, as set forth in plaintiff's motion to remand and supporting briefs.

## FACTUAL BACKGROUND

7. Defendants, collectively "VGW," makes available online games of chance in a variety of formats including, but not limited to, slot machines, other casino-style games, card games and other games of chance. Below is a typical example of the games available on these sites:



8. Customers initially receive some free coins to play the games. They then spend coins to play the game. For example, on the slot type games customers

3

spend some of their coins to spin the reels. If they lose, they lose the coins wagered. If they win, they win additional coins allowing them to play longer. When a consumer runs out of coins entirely, they must either stop playing the game or spend real money to purchase additional coins, which can be spent in the same way.

9. Defendant collects millions of dollars in revenue each year from consumers who purchase coins on its websites and applications and use them to play the slot machines and other games of chance found there.

## ALABAMA'S GAMBLING LAWS

10. "[T]he public policy of this State, as recorded in the Constitution, is that illegal gambling is harmful." Alabama v. Epic Tech, L.L.C., 323 So.3d 572, 582 (Ala. 2020). Indeed, as stated by our Supreme Court as long ago as 1888 and as recently as 2020, Alabama's judiciary has long recognized the Legislature's condemnation of the societal harm of illegal gambling:

> This construction is in full harmony with the policy of the constitution and laws of Alabama prohibitory of the vicious system of lottery schemes and the evil practice of gaming, in all their protean shapes, tending, as centuries of human experience now fully attest, to mendicancy and idleness on the one hand, and moral profligacy and debauchery on the other. No state has more steadfastly emphasized its disapprobation of all these gambling devices of money-making by resort to schemes of chance than Alabama. For more than 40 years past -- we may say, from the organization of the state, with some few years of experimental leniency -- the voice of the legislature has been loud and earnest in its condemnation of these immoral practices, now deemed so enervating to the public morals.

State v. Epic Tech, LLC, 323 So. 3d 572, 582 (Ala. 2020) (quoting Johnson v. State, 83 Ala. 65, 3 So. 790, 791 (1888)).

11. Alabama's public policy against gambling, as embodied in the Alabama Constitution, is so strong that its Legislature cannot permit a game of chance involving some skill unless skill is the dominant factor, not chance. Opinion of Justices, 795 So. 2d 630 (Ala. 2001) (referencing Section 65 of the Alabama Constitution).

12. The Alabama criminal laws pertaining to gambling are codified at Sections 13A-12-20 through 13A-12-92 of the Code of Alabama, 1975. Section 13A-12-22(a) states "[a] person commits the crime of promoting gambling if he knowingly advances or profits from unlawful gambling activity otherwise than as a player." Section 13A-12-23 adds: "A person commits the crime of conspiracy to promote gambling if he conspires to advance, or profit from gambling activity, otherwise than as a player."

13. The statute also defines gambling itself. "A person engages in gambling if he stakes or risks something of value upon the outcome of a contest of chance or a future contingent event not under his control or influence, upon an agreement or understanding that he or someone else will receive something of value in the event of a certain outcome." Ala. Code § 13A-12-20(4) (1975).

14. As noted above, players of defendants' games pay real money to purchase coins, which they then wager in the hopes of winning more coins so that they can continue to play without making additional purchases. They make this wager on the outcome of the spin of a slot machine or the results of other gambling games.

15. Under Alabama law, "something of value" specifically includes "extension of a service entertainment or a privilege of playing at a game or scheme without charge." Ala. Code § 13A-12-20(11). As a matter of law, paying money to get "coins" that one bets hoping to win more coins so as to gain the "privilege of playing at a game or scheme without charge" is gambling a thing of value in Alabama.

16. Alabama law also defines the term "contest of chance" to include "{a]ny contest, game, gaming scheme or gaming device in which the outcome depends in a material degree upon an element of chance, notwithstanding that skill of the contestants may also be a factor therein." Ala. Code § 13A-12-20(3). Defendants' gambling games are contests of chance under Alabama law.

17. As noted above, Alabama law provides a statutory civil cause of action to recover money paid and lost due to gambling. Ala. Code § 8-1-150. Subsection (b) of the statute provides:

> (b) ***Any other person*** may also recover the amount of such money, thing, or its value by an action commenced within 12 months after the

6

>payment or delivery thereof for the use of the wife or, if no wife, the children or, if no children, the next of kin of the loser.

Ala. Code § 8-1-150(b) (emphasis supplied). Plaintiff Amy Nicole Seal is such an "other person" with respect to every Alabama citizen who paid money to VGW to play gambling games within the past 12 months. The Alabama Legislature, therefore, has explicitly authorized her to bring this action to return that money to the families of the Alabamians who lost it. Plaintiff does not seek to recover the losses of any Alabama citizen who lost $75,000 or more during the statute of limitations period.

18. While there is a dearth of Alabama caselaw interpreting the plain language of Section 8-1-150(b), authority from other states with similarly-worded statutes make it plain that such provisions should be enforced according to their unambiguous meaning. A notable recent example is <u>Commonwealth ex rel. Brown v. Stars Interactive Holdings (IOM), Ltd.</u>, 617 S.W. 3d 792 (Ky. 2020), where the Supreme Court of Kentucky was faced with a similar gambling recovery statute authorizing "any other person" to sue and recover for gambling losses incurred by Kentucky citizens. In that case, the state of Kentucky sued the offshore operator of an online gambling site called PokerStars. The state sought recovery of all losses by Kentucky citizens, invoking a statute very similar to Alabama's authorizing "any other person" to recover gambling losses. The defendant argued that the state was not a "person" within the meaning of the statute. The supreme court rejected that

7

argument and reinstated the state's judgment against the defendant, reasoning that the word "any" in the phrase "any other person" "means one indiscriminately of whatever kind or class; one, no matter what one and is an indefinite pronominal adjective used to designate objects in a general way without pointing out any one in particular. By using the phrase 'any other person,' the General Assembly plainly expressed that it meant to confer standing on *all* the kinds and classes of persons . . . *without exception*." Id. at 799 (internal quotations and citations omitted; emphasis supplied). Using this definition, plaintiff unquestionably has standing to represent the family of gamblers who lost money playing Defendant's games.

## THIS CASE IS NOT SUBJECT TO FEDERAL COURT JURISDICTION

19. This action is not a class action. The legislature authorized "any person" to bring the suit, not just a person who could meet the requirements of Rule 23.

20. The Alabama Supreme Court has held that when a statute authorizes "any person" to bring an action, it means what it says. See Bates v. Crane, 157 So. 3d 171, 174-75 (Ala. 2014) (interpreting statute that allowed any person to bring complaint before police board).

21. Instead of a class action under Rule 23, this case is what is typically called a "private attorney general action." See Smith v. Southeastern Financial Corp., 337 So. 2d. 330 (Ala. 1976) ("The Civil Worthless Check Act by using the word 'unlawful' and allowing a civil action to be maintained regardless of whether

a criminal action has been instituted promotes the private Attorney General concept."). In such an action, the state or other governmental unit authorizes an individual to act on its behalf and enforce the statute in a private action to enforce a public interest. See, e.g., National Consumers League v. Flowers Bakeries, LLC, 36 F. Supp. 3d 26, 32-33 (D.D.C. 2014). In the Flowers Bakeries case, the plaintiff brought the case, as authorized by a District of Columbia statute, on behalf of purchasers of particular types of bread, who would recover if it prevailed in the case. Id. at 29. Likewise, Ms. Seal brings this case as a private attorney general for the benefit of the family of Alabamians who have lost money to VGW in illegal gambling, pursuant to Section 8-1-150, which explicitly authorizes this type of suit.

22.     The United States Supreme Court has held that actions by an attorney general, no matter how many people may benefit from them, are not "mass actions" or "class actions" under the Class Action Fairness Act, and so cannot be removed to federal court. Mississippi ex rel. Hood v. AU Optronics Corp., 571 U.S. 161, 176 (2014). In Hood, the defendants argued that a case like this one was a mass action under CAFA because, even though there was a single plaintiff, 100 or more persons would benefit from a recovery in the action. Id. at 169. The Supreme Court, in a unanimous decision, rejected this argument, stating that the 100 or more persons mentioned in CAFA "are not unspecified individuals who have no actual participation in the suit, but instead the very 'plaintiffs' referred to later in the

sentence—the parties who are proposing to join their claims in a single trial." Id. The Supreme Court stated: "CAFA's '100 or more persons' phrase does not encompass unnamed persons who are real parties in interest to claims brought by named plaintiffs." Id. Likewise, the federal circuit courts of appeals that have considered the issue have unanimously held that an attorney general or private attorney general action not invoking Rule 23 or a state law counterpart is similarly not a class action with the meaning of CAFA. Canela v. Costco Wholesale Corp., 071 F. 3d 845, 851 (9th Cir. 2020); Mississippi ex rel. Hood v. AU Optronics Corp., 701 F.3d 796, 799 (5th Cir. 2012), rev'd on other grounds, 571 U.S. 161. Because a suit by the Attorney General, like a private attorney general action, has only one plaintiff, and is not brought under Rule 23 or any state law equivalent, it is not removable under CAFA. Id. at 176. The same is true in the case at bar.

23.   Since Hood was decided in 2014, multiple federal courts have relied upon it to hold that private attorney general suits are likewise not covered by CAFA, and thus not removable unless the claims of the named plaintiff exceed $75,000 dollars in controversy. See, e.g., National Consumers League v. Flowers Bakeries, LLC, 36 F. Supp. 3d 26, 32-33 (D.D.C. 2014); Canela v. Costco Wholesale Corp., 971 F.3d 845, 853 (9th Cir. 2020). This case should likewise be heard in state court. The federal courts thus lack jurisdiction because the amount-in-controversy requirement for the named plaintiff cannot be met. For avoidance of doubt, plaintiff

does not seek to recover for anyone who lost $75,000 or more during the statute of limitations period.

## CLAIM FOR RELIEF

24. Pursuant to Section 8-1-150(b) of the Alabama Code, Plaintiff Amy Nicole Seal seeks recovery of all sums paid by Alabama residents to VGW in its online gambling games during the period beginning one year before the filing of this complaint until this case is resolved, except that she does not seek recovery of any money lost by an Alabama resident who lost $75,000 or more during the statute of limitations period.

25. Plaintiff seeks this recovery to go to the benefit of the families of the gamblers who paid the money, as required by Section 8-1-150(b).

## PRAYER FOR RELIEF

Plaintiff respectfully prays that this court:

1) take jurisdiction of this cause;

2) following discovery, enter a final judgment against VGW awarding to the family and next of kin of all gamblers that made payments from Alabama all money paid to play the illegal gambling games described herein, except for amounts paid by gamblers who lost $75,000 or more during the statute of limitations period;

3) appoint a special master to determine all proper recipients of the money at issue;

4) enter a permanent injunction preventing VGW from continuing its illegal activities in Alabama;

5) award interest and costs; and

6) award any other relief to which the Court finds plaintiff and the family members are entitled.

/s/  Dargan M. Ware
Dargan M. Ware
One of the Attorneys for Plaintiff

**COUNSEL:**

John E. Norris
D. Frank Davis
Wesley W. Barnett
Dargan M. Ware
DAVIS & NORRIS, LLP
Telephone: 205.930.9900
Facsimile: 205.930.9989
jnorris@davisnorris.com
fdavis@davisnorris.com
wbarnett@davisnorris.com
dware@davisnorris.com

Jeffrey L. Bowling
BEDFORD, ROGERS & BOWLING, P.C.
303 North Jackson Street
P.O. Box 669
Russellville, AL 35653-0669
Telephone: 256.332.2880
jeffbrbpc@bellsouth.net

## **CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that a true and correct copy of the foregoing was served on all counsel of record in this case through the CM/ECF system of the United States District Court for the Northern District of Alabama on August 23, 2023.

                                        /s/   Dargan M. Ware
                                        One of the attorneys for Plaintiff